**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MOUNT SINAI HOSPITAL; MOUNT SINAI BETH ISRAEL; and ST. LUKE'S-ROOSEVELT HOSPITAL,<br>*Plaintiffs*,<br>v.<br>CVS HEALTH CORPORATION; CAREMARKPCS HEALTH, LLC; CAREMARK, LLC; WELLPARTNER, LLC; and JOHN DOES 1-15,<br>*Defendants*. | Case No. 1:26-cv-4143 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

WILLIAMS & CONNOLLY LLP
650 Fifth Avenue, Suite 1500
New York, NY 10019

680 Maine Avenue, S.W.
Washington, DC 20024

Enu Mainigi (*pro hac vice pending*)
Grant A. Geyerman (*pro hac vice*)
Benjamin N. Hazelwood (Bar No. 5001508)
Joseph S. Sandoval-Bushur (*pro hac vice pending*)

Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
ggeyerman@wc.com
bhazelwood@wc.com
jsandoval-bushur@wc.com

*Attorneys for Defendants CVS Health Corp., CaremarkPCS Health, LLC, Caremark, LLC, and Wellpartner, LLC*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

A. The 340B Program Generally ........................................................................3

B. The Flow of Money Under the 340B Program ..............................................3

C. The Complaint's Contract-Terms Allegations ................................................5

D. The Public Controversy Around the 340B Program.......................................6

E. Plaintiffs' Causes of Action ...........................................................................7

ARGUMENT ..........................................................................................................................8

I. The Court Should Dismiss the Breach-of-Contract Claims....................................8

A. The Contract Claims Fail Against Most Defendants Because No Contract with Them Is Alleged.........................................................................8

B. The Contract Claims Fail Against Caremark, LLC ........................................8

1. The Complaint Does Not Sufficiently Allege a Contract Provision That Caremark, LLC Breached .........................................8

2. There Are No Well-Pled Allegations That Caremark, LLC Breached Contractual Commitments ..................................................9

II. The Court Should Dismiss the Implied Covenant of Good Faith Claim ...............13

A. The Claims Against All Defendants Other Than Caremark, LLC Fail Because Plaintiffs Did Not Contract with Any Defendant Other Than Caremark, LLC .........................................................................13

B. The Implied Covenant Claim Against Caremark, LLC Fails on the Merits ...............................................................................................................14

1. Every Implied-Covenant Theory Is Impermissibly Duplicative of a Breach-of-Contract Theory ....................................14

2. The Termination-Based Theory Fails Because the Contracts Expressly Authorized Termination ...................................................16

III. The Court Should Dismiss the Fraud Claim .........................................................16

A. Any Fraud Claim Against Caremark, LLC Is Impermissibly Duplicative of the Contract Claim ...............................................................17

B. Fraud Is Not Pled with Particularity Against Any Defendant ..................18

IV. The Court Should Dismiss the Tortious Interference with Contract Claim...........19

V. The Court Should Dismiss the Unjust Enrichment Claim ....................................22

VI. The Court Should Dismiss the RICO Claims .....................................................23

A. Plaintiffs Cannot Recharacterize Their Contract Claims as RICO Claims ..........................................................................................24

B. Plaintiffs Do Not Plausibly Allege a RICO "Enterprise" ..........................24

C. Plaintiffs Do Not Adequately Allege the Predicate Acts ...........................25

1. Plaintiffs Suffered No Injury from Two Alleged Predicate Acts ...........................................................................................25

2. Plaintiffs Do Not Plead Any Predicate Act with Particularity .......................................................................................26

VII. The Court Should Dismiss the New York General Business Law Claim.............29

VIII. The Court Should Dismiss CVS Health Corporation ...........................................30

CONCLUSION ...........................................................................................................30

## TABLE OF AUTHORITIES

### CASES

*25 Bay Terrace Assoc., L.P. v. Public Serv. Mut. Ins. Co.*, 148 N.Y.S.3d 484 (2d Dep't 2021) .......... 13

*AbbVie Inc. v. Drummond*, 808 F. Supp. 3d 1266 (W.D. Okla. 2025) .......... 29

*AbbVie Inc. v. Murrill*, --- F.4th ---, 2026 WL 1947948 (5th Cir. July 6, 2026) .......... 11

*Ackerson v. Restani Constr. Corp.*, 223 N.Y.S.3d 268 (2d Dep't 2024) .......... 13, 16

*AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 2003 WL 21203503 (S.D.N.Y. May 22, 2003) .......... 21

*Alexander v. Sandoval*, 532 U.S. 275 (2001) .......... 11

*Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, 2021 WL 4033249 (E.D.N.Y. Sept. 3, 2021) .......... 12

*Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999) .......... 24

*Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp. 3d 169 (S.D.N.Y. 2023) .......... 4

*Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011) .......... 3, 11

*Atari, Inc. v. Games, Inc.*, 2005 WL 447503 (S.D.N.Y. Feb. 24, 2005), *aff'd*, 164 F. App'x 183 (2d Cir. 2006) .......... 14

*Banco Espírito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004) .......... 22, 23

*Bennett v. Atomic Prods. Corp.*, 18 N.Y.S.3d 443 (2d Dep't 2015) .......... 13

*Bigsby v. Barclays Cap. Real Est., Inc.*, 170 F. Supp. 3d 568 (S.D.N.Y. 2016) .......... 28

*Black Car & Livery Ins. v. H & W Brokerage*, 813 N.Y.S.2d 751 (2d Dep't 2006) .......... 8

*Boustead Sec., LLC v. Leaping Grp. Co.*, 2021 WL 3774116 (S.D.N.Y. Aug. 25, 2021) .......... 14, 15

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996) .......... 18

*Broder v. Cablevision Sys. Corp.*, 329 F. Supp. 2d 551 (S.D.N.Y. 2004), *aff'd*, 418 F.3d 187 (2d Cir. 2005) .......... 11

*Church Ekklasia Sozo Inc. v. CVS Health Corp.*, 2022 WL 1572732 (W.D.N.C. Feb. 25, 2022) .......... 30

*Columbia Terrace Dev. Corp. v. Brown*, 545 N.Y.S.2d 579 (2d Dep't 1989) ............................13

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553 (S.D.N.Y. 2004)............14, 15

*Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016).......................................30

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013).................................................24, 25

*De Jesus v. Sears, Roebuck, & Co., Inc.*, 87 F.3d 65 (2d Cir. 1996)............................................30

*Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861 (2d Cir. 2015) ........................15

*Discover Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78 (E.D.N.Y. 2004)..........................21

*Dorsett-Felicelli, Inc. v. County of Clinton*, 2011 WL 1097859 (N.D.N.Y. Mar. 22, 2011) ........22

*Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229 (S.D.N.Y. 2011) ........................................27

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
2017 WL 5559030 (E.D.N.Y. Mar. 16, 2017), *aff'd*, 902 F.3d 132 (2d Cir. 2018) ................25

*Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132 (2d Cir. 2018).....................26

*Empire Outlet Builders LLC v. Constr. Res. Corp. of N.Y.*,
97 N.Y.S.3d 68 (1st Dep't 2019) ..............................................................................................18

*Fink v. Time Warner Cable*, 810 F. Supp. 2d 633 (S.D.N.Y. 2011)...............................................9

*Fisher v. APP Pharms., LLC*, 783 F. Supp. 2d 424 (S.D.N.Y. 2011) ...........................................19

*Gan v. GSUIG Real Est. Member LLC*, 797 F. Supp. 3d 69 (E.D.N.Y. 2025),
*aff'd*, 2026 WL 1145891 (2d Cir. Apr. 28, 2026).......................................................20, 21, 22

*Hanover Specialties, Inc. v. Les Revêtements Polyval Inc.*,
2021 WL 964970 (E.D.N.Y. Mar. 15, 2021)..................................................................................22

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
690 F. Supp. 3d 167 (S.D.N.Y. 2023)..........................................................................................28

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
2013 WL 3943267 (S.D.N.Y. July 31, 2013) .............................................................................24

*Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004)..............8, 9

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*,
37 N.Y.3d 169 (2021) ......................................................................................................................29

*Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992)..................................................................25

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132 (2009).............................22, 23

*IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277 (2023) ........................................17, 18

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395 (S.D.N.Y. 2009) ............19

*In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) .....................................29

*In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337 (S.D.N.Y. 2016) ................................................30

*In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98 (2d Cir. 2015)..........................................16

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118 (2d Cir. 2022).........................16

*Jordan v. Verizon Corp.*, 2008 WL 5209989 (S.D.N.Y. Dec. 10, 2008)................................14, 15

*Khodeir v. Sayyed*, 323 F.R.D. 193 (S.D.N.Y. 2017) ..........................................................12, 17

*Koret, Inc. v. Christian Dior, S.A.*, 554 N.Y.S.2d 867 (1st Dep't 1990) ......................................20

*Lashes by Katie, LLC v. Lend Bug, LLC*,
2026 WL 810520 (S.D.N.Y. Mar. 23, 2026) .............................................................17, 18, 22

*Lefkowitz v. Reissman*, 2014 WL 925410 (S.D.N.Y. Mar. 7, 2014).............................................28

*LePatner & Assocs., LLP v. RSUI Grp., Inc.*, 2021 WL 4555761 (S.D.N.Y. Oct. 4, 2021) .........14

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ......................................................18, 29

*Levinson v. Primedia Inc.*, 2007 WL 2298406 (S.D.N.Y. Aug. 9, 2007).....................................21

*Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*,
651 N.Y.S.2d 490 (1st Dep't 1996) ..........................................................................................12

*Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601 (S.D.N.Y. 2014),
*aff'd*, 607 F. App'x 123 (2d Cir. 2015).......................................................................................12

*Martin v. Tumblr, Inc.*, 2017 WL 11665339 (S.D.N.Y. Feb. 10, 2017) .......................................16

*Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245 (S.D.N.Y. 2008)...............................26

*MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 84 N.Y.S.3d 157 (1st Dep't 2018)................18

*McKinney v. Moore*, 2007 WL 1149253 (S.D.N.Y. Apr. 16, 2007).............................................26

*MT Prop., Inc. v. Ira Weinstein & Larry Weinstein, LLC*,
855 N.Y.S.2d 627 (2d Dep't 2008)............................................................................................23

*MTI/The Image Grp., Inc. v. Fox Studios E., Inc.*, 690 N.Y.S.2d 576 (1st Dep't 1999) ...............20

*Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201 (S.D.N.Y. 2016) ...........22, 23

*Multi-Juice, S.A. v. Snapple Beverage Corp.*,
2003 WL 1961636 (S.D.N.Y. Apr. 25, 2003)..............................................................................20

*Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454 (S.D.N.Y. 2016),
*aff'd*, 759 F. App'x 42 (2d Cir. 2019)...........................................................................9, 19

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308 (1995) ..........................................................29

*PhRMA v. HHS*, 43 F. Supp. 3d 28 (D.D.C. 2014)...........................................................................7

*Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318 (S.D.N.Y. 2017).............20, 21

*Ramus v. Bruwer*, 2025 WL 831109 (S.D.N.Y. Mar. 17, 2025) ............................................17, 18

*Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704 (S.D.N.Y. 2014) ............................14

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994) ........25

*Schachter v. Sunrise Senior Living Mgmt., Inc.*,
2020 WL 1274601 (D. Conn. Mar. 16, 2020) ..............................................................................30

*Schuman v. Visa U.S.A., Inc.*, 788 F. Supp. 3d 563 (S.D.N.Y. 2025)..........................................29

*Spencer-Smith v. Ehrlich*, 2024 WL 709291 (S.D.N.Y. Feb. 21, 2024)..........................................8

*Spinelli v. NFL*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015) .......................................................................8

*Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54 (2d Cir. 2013) ...............17

*Tashjian v. CVS Pharm., Inc.*, 2020 WL 1931859 (D. Mass. Mar. 13, 2020)...............................30

*United States v. Bestfoods*, 524 U.S. 51 (1998) .............................................................................30

*United States v. Lasky*, 967 F. Supp. 749 (E.D.N.Y. 1997)..........................................................26

*Vaughn v. Air Line Pilots Ass'n, Int'l*, 395 B.R. 520 (E.D.N.Y. 2008) ........................................27

*Virtual Dates, Inc. v. Afternic.com, Inc.*, 2001 WL 1646451 (S.D.N.Y. Dec. 20, 2001) .............24

## STATUTES

18 U.S.C.

§ 664 .......... 26, 27

§ 1343 .......... 25

§ 1954 .......... 25, 27, 28

§ 1962(c) .......... 24

§ 1964(c) .......... 25

42 U.S.C.

§ 256b(a)(1) .......... 3

§ 256b(a)(4) .......... 2

§ 256b(a)(4)(A) .......... 3

§ 256b(a)(4)(L) .......... 3

N.Y. Gen. Bus. Law § 349 .......... 2, 8, 29

## REGULATIONS & RULEMAKINGS

42 C.F.R. § 10.1 .......... 11

75 Fed. Reg. 10,272 (Mar. 5, 2010) .......... 7, 11

## FEDERAL RULES

Fed. R. Civ. P. 8 .......... 9

Fed. R. Civ. P. 9(b) .......... *passim*

## OTHER AUTHORITIES

S. Thomas & K. Schulman, *The Unintended Consequences of the 340B Safety-Net Drug Program*, 55 Health Servs. Rsch. 153 (Mar. 1, 2020), https://bit.ly/4wNooI9 .......... 7

*The 340B Drug Discount Program: Litigation Topics & Trends*, Cong. Rsch. Serv. (Sept. 10, 2025), https://bit.ly/451i2bZ .......... 3, 6

## INTRODUCTION

The federal 340B program is politically controversial. It requires pharmaceutical manufacturers to sell drugs to certain healthcare facilities at reduced prices. Those facilities generate so-called 340B "savings" by acquiring the discounted drugs and selling them to patients at a higher price. Pharmaceutical manufacturers have been critical of how healthcare facilities—like the Plaintiff-hospitals here—use those savings. Manufacturers have also been critical of Congress for failing to restrict how hospitals use those 340B savings and for failing to restrict hospitals' ability to contract with so-called 340B "contract pharmacies" to capture more 340B savings when patients elect to fill prescriptions at those pharmacies. Under the 340B program, Plaintiffs play no role in determining how much insurance companies pay a pharmacy benefits manager (like Defendant CaremarkPCS Health, LLC) or, in turn, how much a PBM pays a contract pharmacy (like Defendant Caremark, LLC) for 340B-eligible drug claims. And no statute, regulation, or other law restricts how 340B savings are divided between the hospital, on the one hand, and the contract pharmacy, on the other, pursuant to the hospital-contract pharmacy contract.

In spite of this, the Complaint reads as if the case raises important questions about the 340B program. It does not. It is a simple contract case in which Plaintiffs claim they were underpaid by Caremark, LLC, a specialty pharmacy, under the terms of the parties' contracts.

Although Plaintiffs have sued both Caremark, LLC and three other entities in the same corporate family—a pharmacy benefits manager (CaremarkPCS Health, LLC), a 340B administrator (Wellpartner, LLC), and their ultimate parent (CVS Health Corporation)—the only Defendant alleged to have actually contracted with Plaintiffs is Caremark, LLC. The claims for breach of contract and denial of an audit, then, necessarily fail against the other Defendants.

The Complaint also fails to state a claim for breach of contract against Caremark, LLC. It never alleges with facts or specificity the essential elements of the parties' agreement—the

language, the paragraph(s), the section(s)—that Caremark, LLC supposedly violated by calculating Plaintiffs' share of the reimbursement. This omission (and others) forecloses any plausible allegation of a breach of contract. The same goes for the implied covenant of good faith and fair dealing claim, which impermissibly recycles the principal breach-of-contract claim.

The Complaint also flunks the pleading standards for fraud, unjust enrichment, and tortious interference with contract. These claims fail when, as here, they are duplicative of a breach-of-contract claim. These claims also are pled only vaguely, not with particularity or specificity. The fraud claim, for example, never identifies anyone who made a supposedly false statement, when it happened, where it happened, and who at Plaintiffs received it and relied upon it.

The same is true of Plaintiffs' statutory claims under RICO and the New York General Business Law, Section 349. The allegations cannot satisfy RICO's "enterprise" requirement given the Defendants' familial relationship, and Plaintiffs do not sufficiently allege predicate acts. The Section 349 claim fails because this case involves a contract dispute between two businesses, not "consumer-oriented conduct" for which the statute provides a remedy.

The Court should grant the motion and dismiss the Complaint.

## FACTUAL BACKGROUND

Plaintiffs are three hospitals in Manhattan that qualify as "covered entities" under the federal 340B program. Am. Compl. (ECF 21) ("Compl.") ¶¶ 26-29; *see* 42 U.S.C. § 256b(a)(4).[1]

The named Defendants are CVS Health, a holding company of various healthcare companies, and three of its operating subsidiaries: CaremarkPCS Health, LLC, a pharmacy benefits manager or "PBM," *id.* ¶¶ 2, 9, 32; Caremark, LLC, an operator of "specialty pharmacies," *id.* ¶¶ 4, 30, 33; and Wellpartner, LLC, a provider of "third party administration services" for 340B

[1] As they must at this stage, Defendants treat the Complaint's allegations as true in this motion.

covered entities, *id.* ¶ 35. Defendant CVS Specialty, Inc. has been voluntarily dismissed. ECF 31. The Complaint also names 15 "John Does," although it never identifies even one particular name, position, or title, or attributes any action (wrongful or otherwise) to anyone in particular.

**A. The 340B Program Generally**

Section 340B of the Public Health Services Act instructs the Secretary of Health and Human Services to contract with pharmaceutical manufacturers, wherein the manufacturers commit to offering "covered outpatient drugs" at reduced prices to healthcare providers called "covered entit[ies]." 42 U.S.C. § 256b(a)(1); *see Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 113 (2011). Those "covered entities" are enumerated in the statute and include hospitals that serve a "disproportionate share" of low-income patients. 42 U.S.C. § 256b(a)(4)(A), (L). In effect, "Section 340B . . . imposes ceilings on prices drug manufacturers may charge for medications sold to" covered entities. *Astra*, 563 U.S. at 113.

"Covered entities may generate significant revenue from 340B, known as '340B savings.'" *The 340B Drug Discount Program: Litigation Topics & Trends*, Cong. Rsch. Serv., at 1 (Sept. 10, 2025), https://bit.ly/451i2bZ ("CRS Rep."); *accord* Compl. ¶¶ 2, 51-52. Those savings result because covered entities buy drugs from manufacturers at substantial discounts and then "resell[] discounted drugs to their patients and receiv[e] reimbursement from the patient's insurance (if applicable) as though the covered entity paid full price for the drug." CRS Rep., at 1.

**B. The Flow of Money Under the 340B Program**

Anytime a patient with insurance fills a prescription (whether 340B-eligible or not), the pharmacy will submit a "claim" to an entity known as a pharmacy benefits manager, or "PBM." Compl. ¶ 59. "PBMs are primarily responsible for processing and paying prescription drug claims submitted by [pharmacies]." *Id.* "PBMs are fiscal intermediaries" that sit between the insurer, on the one hand, and the pharmacy, on the other. *Id.* The insurer pays the PBM for the prescription

per the financial terms of an insurer-to-PBM contract, and the PBM pays the pharmacy for the prescription per the terms of a pharmacy-to-PBM contract. *See, e.g.*, *Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp. 3d 169, 173 (S.D.N.Y. 2023). The PBM determines these two amounts during an electronic "adjudication" process. Compl. ¶ 5. The insurer's payment to the PBM is not always the same as the PBM's payment to the pharmacy; whether those payments are the same or different depends upon the terms of the insurer-to-PBM contract. *See, e.g.*, *Anthem*, 660 F. Supp. 3d at 173. The Complaint does not allege otherwise.

A 340B transaction is more complicated, involving at least two additional stakeholders: the covered entity and the manufacturer. *Supra* p. 3. Because manufacturers must sell drugs at or below the 340B ceiling price only when the program criteria are met, covered entities must "determine whether a particular claim is 340B eligible." Compl. ¶ 77. They often hire a third-party administrator to do this "complex" and "retroactive[]" process that is performed after the pharmacy has already given the drug to the patient. *Id.* ¶¶ 77-78.

To synthesize these steps for an example 340B prescription:

*First*, one of Plaintiffs' patients obtains the prescribed medication from either the covered entity itself (via its in-house pharmacy) or from an outside pharmacy with which the covered entity has contracted, the so-called "contract pharmacy." *Id.* ¶ 53. This case concerns prescriptions dispensed by Caremark, LLC in its capacity as a contract pharmacy. *See id.* ¶ 89.

*Second,* if the patient of a covered entity chooses to obtain a prescription from Caremark, LLC, the pharmacy transmits a "claim" to the PBM associated with the patient's insurer.

*Third*, if that PBM is CaremarkPCS Health, then CaremarkPCS Health determines what the patient owes for the medicine. *Id.* ¶ 76. CaremarkPCS Health transmits that number back to the pharmacy, the patient pays any cost-share, and Caremark, LLC dispenses the prescription. *Id.*

*Fourth*, "[a]fter the point of sale," an administrator will analyze data to determine whether the prescription is eligible for the 340B program. *Id.* ¶ 11. In this case, the 340B administrator is Wellpartner. *Id.* ¶ 79. If the claim is 340B-eligible, "Wellpartner flags the adjudicated claim as a 340B claim and relays that information to CaremarkPCS [Health]." *Id.* ¶ 11.

*Fifth*, CaremarkPCS Health (the PBM) reimburses Caremark, LLC (the specialty pharmacy) for the prescription. *Id.*

*Sixth*, Caremark, LLC's reimbursement is allocated three ways: Caremark, LLC keeps "a certain defined percentage . . . as [its] dispensing fee," *id.* ¶ 7; Wellpartner, as administrator, receives its own "administrative fee," *id.* ¶ 84; and a share goes to Plaintiffs, the covered entities. This case concerns whether Plaintiffs received too little a share under their contracts with Caremark, LLC.

At some point during this process, CaremarkPCS Health (the PBM) also determines the amount it is owed by the insurer (which may or may not be the same as the amount the pharmacy receives), and invoices the insurer for that amount. *Id.* ¶ 68.

### C. The Complaint's Contract-Terms Allegations

The Complaint is clear that "Plaintiffs entered into Pharmacy Services Agreements [plural] with Caremark, LLC for pharmacy services through Caremark, LLC's contract specialty pharmacies." *Id.* ¶ 30. Yet the Complaint does not address many facts about the contracts, such as the number of contracts, when they started, when they terminated, or what the parties intended. The Complaint does not allege that Plaintiffs contracted with any Defendant but Caremark, LLC.

Despite asserting a breach of contract as its lead claim, the Complaint does not attach the contract(s). Nor does it quote a specific provision(s) that was supposedly breached. Instead, the Complaint includes only one sentence revealing Plaintiffs' thinking: "[t]he Agreements between Plaintiffs and Caremark LLC require Defendants [plural] to pass along to Plaintiffs all revenues

the PBM receives from insurance carriers and other third-party payors for 340B-discounted drugs dispensed, minus a dispensing fee." *Id.* ¶ 6. But the Complaint does not allege any specific provision that actually said Plaintiffs must receive "all revenues the PBM receives from insurance carriers," as opposed to, for example, the amount of the specialty pharmacy's reimbursement. The Complaint does not even allege the specific percentage(s) that Caremark, LLC was owed or Wellpartner, LLC's fee. The Complaint also does not allege any specific facts concerning how CaremarkPCS Health calculated Caremark, LLC's reimbursement on 340B prescriptions, despite pejoratively saying it was "artificially reduced" or "arbitrarily slash[ed]." *Id.* ¶¶ 86, 116.

The Complaint also acknowledges that Caremark, LLC has "terminated Plaintiffs from the 340B Contract Pharmacy arrangement," but is silent about the contract's terms specifying the circumstances in which Caremark, LLC (or Plaintiffs) were permitted to terminate the arrangement. *Id.* ¶ 23. The Complaint does not, therefore, allege the contracts were anything other than terminable at will. The parties have no ongoing business relationship.[2]

**D. The Public Controversy Around the 340B Program**

"The [340B] program is administered by the Office of Pharmacy Affairs (OPA) at the Health Resources and Services Administration (HRSA), a division of the U.S. Department of Health and Human Services (HHS)." CRS Rep., at 1. "Particularly since 2020, both legal and policy disagreements have arisen between HRSA, covered entities, and drug manufacturers about how HRSA ensures compliance from both covered entities and manufacturers, as well as how the agency enforces the [340B] statute." *Id.* at 3. No Defendant is a covered entity or a manufacturer.

Relevant here, Congress has never restricted how covered entities must spend 340B

[2] Should the case proceed into discovery, the record will reflect that Plaintiffs' contracts were, in fact, terminable (and terminated) for convenience upon thirty days' written notice.

savings, or how 340B savings must be used or allocated under a covered entity's agreement(s) with contract pharmacies or administrators. Nor has HRSA done so via regulation. Indeed, "the 340B statute does not give [HRSA] general rulemaking authority to administer the program." *Id.* at 3; *see PhRMA v. HHS*, 43 F. Supp. 3d 28, 41 (D.D.C. 2014). That is why the Complaint repeatedly refers to "guidance," not any specific regulation. *See*, *e.g.*, Compl. ¶¶ 53, 54, 102.

The Complaint acknowledges the program's lack of constraints. Although "in theory," Plaintiffs say, "340B providers 'pass on' those savings to their patients through lower costs for medications," in reality "340B providers . . . use those greater profit margins [created by the manufacturer discounts] to subsidize other unfunded areas of their operations and expand their community benefits programs." *Id.* ¶ 52; *see also* S. Thomas & K. Schulman, *The Unintended Consequences of the 340B Safety-Net Drug Program*, 55 Health Servs. Rsch. 153, 154 (Mar. 1, 2020), https://bit.ly/4wNooI9 (noting "concerns" that "benefits may not be going to the intended low-income and uninsured patients" since nothing requires covered entities to use savings for "charity care service[s]"). Tellingly, the Complaint does not say how Plaintiffs spent the hundreds of millions in savings received because their patients selected Caremark, LLC as their pharmacy.[3]

Here, the upshot of the lack of constraints is simple: only the contract between a covered entity and a contract pharmacy controls what the pharmacy should pay the covered entity.

**E. Plaintiffs' Causes of Action**

The Complaint asserts (1) breach of contract, (2) breach of the contract's audit provision, (3) breach of the implied covenant of good faith, (4) fraud, (5) tortious interference with contract,

[3] Notably, if a covered entity's patient chooses to use a pharmacy that is not a contract or in-house pharmacy, the patient's prescription is ineligible for 340B pricing. 75 Fed. Reg. 10,272, 10,278 (Mar. 5, 2010). Therefore, covered entities are strongly incentivized to maximize their patients' use of contract or in-house pharmacies instead of competitors to increase 340B transactions.

(6) unjust enrichment, (7) civil RICO, and (8) violations of New York General Business Law, Section 349. Plaintiffs assert each claim against every Defendant, except tortious interference is not alleged against Caremark, LLC. Compl. ¶¶ 169-250.

## ARGUMENT

### I. The Court Should Dismiss the Breach-of-Contract Claims

#### A. The Contract Claims Fail Against Most Defendants Because No Contract with Them Is Alleged

A claim for breach of contract requires "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Spencer-Smith v. Ehrlich*, 2024 WL 709291, at *12 (S.D.N.Y. Feb. 21, 2024) (citation omitted).[4] Someone who is "not a party" to a contract cannot be sued for breach of contract. *See, e.g.*, *Black Car & Livery Ins. v. H & W Brokerage*, 813 N.Y.S.2d 751, 752 (2d Dep't 2006).

Here, Plaintiffs allege contracting only with Caremark, LLC. Compl. ¶¶ 30, 170. Because "CVS Health, CaremarkPCS, CVS Specialty, WellPartner, LLC and the John Doe Defendants" "were not express signatories to the Agreements," *id.* ¶ 239, the contract claims against them (Counts I and VIII) fail, *see, e.g.*, *Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) (dismissing contract claim against non-signatory).

#### B. The Contract Claims Fail Against Caremark, LLC

##### 1. The Complaint Does Not Sufficiently Allege a Contract Provision That Caremark, LLC Breached

To state a plausible claim, a complaint must "identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached." *Spencer-Smith*, 2024 WL 709291, at *12 (dismissing claim on this basis); *see Spinelli v. NFL*, 96 F. Supp. 3d 81, 131-32 (S.D.N.Y.

[4] Unless otherwise noted, all internal quotation marks are omitted and all emphasis is added.

2015) (same). Otherwise, a court cannot assess whether a plaintiff's accusation of breach is plausible as required by Rule 8. *See Highlands*, 2004 WL 35439, at *8; *see also Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) ("[A] plaintiff does not meet the *Twombly-Iqbal* standard and must be dismissed when the Complaint does not specify which clause of the Agreement Defendant is alleged to have breached."), *aff'd*, 759 F. App'x 42 (2d Cir. 2019).

The Complaint does not quote from or attach any of the contracts with Caremark, LLC and fails to specify the "essential terms" that Caremark, LLC supposedly violated. The deficiency mirrors that in *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633 (S.D.N.Y. 2011), where the plaintiffs claimed they "contract[ed] with Defendant to pay monthly fees in exchange for its high-speed internet service . . . and that Defendant breached the contract by intentionally interfering with their access to and use of the high-speed internet service." *Id.* at 644. The court held the plaintiffs failed to set forth "the essential terms of the contract that they allege[d] Defendant ha[d] breached with requisite specificity." *Id.* at 645. So too here. The Complaint states only that "[t]he Agreements between Plaintiffs and Caremark LLC require Defendants [plural] to pass along to Plaintiffs all revenues the PBM receives from insurance carriers and other third-party payors for the 340B-discounted drugs dispensed, minus a dispensing fee." Compl. ¶ 6. Without allegations that this promise appears in the text of a contractual provision, however, Plaintiffs offer only a "simple characterization of the nature of the promise," which is "insufficient to make the requisite plausible factual demonstration of the basis of Plaintiffs' claim." *Fink*, 810 F. Supp. 2d at 645.

#### 2. There Are No Well-Pled Allegations That Caremark, LLC Breached Contractual Commitments

Without committing to any specific contractual language that supposedly supports Plaintiffs' claim of breach, the Complaint throws out four theories why Caremark, LLC allegedly "failed to perform under the Agreements." Compl. ¶ 177. Each theory fails.

1. Caremark, LLC breached the contracts, Plaintiffs say, by "not remitting all payments made to CaremarkPCS [by insurers] at the point-of-sale for the 340B drugs to Plaintiffs." *Id.* ¶ 177(1). But Plaintiffs never allege any specific contractual provision in which Caremark, LLC, a specialty pharmacy, committed to remitting to Plaintiffs "all payments made to CaremarkPCS," a PBM and different company engaged in a different line of business. Their vague statement that "[t]he Agreements contain a provision relating to the remittance of all reimbursement obtained by Defendants from all sources" is not well pled. *Id.* ¶ 172. Many things could be said to "relate to" the different reimbursement amounts "obtained by [the various] Defendants." Yet that is far from alleging, plausibly and with specificity, a contractual provision that committed Caremark, LLC to pay Plaintiffs an amount calculated from reimbursements received by other entities.

2. Plaintiffs also characterize the breach as "lowering the 340B reimbursement amount paid to Caremark LLC/CVS Specialty for no purpose other than to deprive Plaintiffs of the 340B Savings." *Id.* ¶ 177(2). This fails too. If the PBM "lower[ed] the 340B reimbursement amount paid *to Caremark LLC*," *id.*, that does not suggest a violation of any promise of performance that Caremark, LLC made *to Plaintiffs*. The Complaint contains no factual allegations suggesting that Caremark, LLC made any commitments to Plaintiffs about what 340B reimbursement amounts Caremark, LLC would receive from the PBM.

3. Plaintiffs further contend Caremark, LLC breached its contracts by "not complying with HRSA and OPA regulations and guidelines" that supposedly "require Caremark LLC/CVS Specialty to ensure that all 340B savings will accrue to the Covered Entities and that Defendants will not retain Spread on 340B claims." *Id.* ¶ 177(3). *But there are no such regulations or guidelines*. That is why the Complaint does not name any. Indeed, HRSA (and its parent agency HHS) "lack[] authority to regulate" contract pharmacies, like Caremark, LLC, in the first place.

*AbbVie Inc. v. Murrill*, --- F.4th ---, 2026 WL 1947948, at *11 n.94 (5th Cir. July 6, 2026). As to 340B, HRSA regulates manufacturers and covered entities. *See generally* 42 C.F.R. § 10.1 *et seq.* Caremark, LLC is no such entity.

At most, the Complaint alleges actions supposedly "contrary to the intent and purpose of the 340B Program," Compl. ¶ 21, citing a HRSA statement that "the benefit of the program was intended to accrue to the covered entities," *id.* ¶ 103 (quoting 75 Fed. Reg. at 10,277). Notably, though, HRSA referenced this general intent in ***rejecting*** a proposal to "include in its final guidance . . . language to reinforce that all savings from the 340B program should remain with the covered entity." 75 Fed. Reg. at 10,277. In short, when 340B stakeholders pressed HRSA to say a specified amount of 340B savings must remain with covered entities, HRSA declined to do so.

Compounding the problem, Plaintiffs cannot use a contract claim to enforce a HRSA regulation. "[C]overed entities have no right of action under § 340B." *Astra*, 563 U.S. at 117. Congress instead "vested authority to oversee compliance with the 340B Program in HHS and assigned no auxiliary enforcement role to covered entities." *Id.*; *see also Broder v. Cablevision Sys. Corp.*, 329 F. Supp. 2d 551, 559 (S.D.N.Y. 2004) (rejecting breach-of-contract claim premised on statute that lacked a private right of action), *aff'd*, 418 F.3d 187 (2d Cir. 2005). Moreover, only statutes enacted by Congress, not regulations promulgated by agencies, can create a private right of action. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).

4. Plaintiffs' last theory is that Caremark, LLC did "not comply[] with Plaintiffs' reasonable audit requests." Compl. ¶ 177(4). Plaintiffs also independently raise this theory in Count VIII for "Denial of an Audit." *Id.* ¶¶ 244-50. This theory fails for two reasons.[5]

[5] Plaintiffs contend that only Caremark, LLC "had a contractual duty to cooperate with Plaintiffs' requests to audit the pharmacies' books and records," Compl. ¶ 245, claiming it "refused Plaintiffs'

*First*, Plaintiffs fail to plead the contract language and associated facts giving rise to potential audit-related liability. Plaintiffs allege generically that "[t]he Pharmacy Services Agreements contain procedures for Plaintiffs to conduct audits of Caremark LLC." Compl. ¶ 95. But to say "conduct[ing] audits" was permitted is vague and does not say what information specifically was auditable versus not, under what circumstances audits were permitted, what conditions must precede an audit, etc. In other words, Plaintiffs do not allege any specifics concerning what "procedures" were promised, properly invoked, but then not provided. Indeed, Plaintiffs' failure to allege even *that they themselves* complied with the audit "procedures" is reason enough to dismiss the claim. *See Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, 2021 WL 4033249, at *6 (E.D.N.Y. Sept. 3, 2021) (collecting cases and dismissing breach-of-contract claim where party "d[id] not allege what its obligations were").

*Second*, Plaintiffs fail to plead any cognizable damages attributable to the denial of an audit. Damages are one essential element of a breach of contract claim. *See Khodeir v. Sayyed*, 323 F.R.D. 193, 202 (S.D.N.Y. 2017). Nowhere in the Complaint do Plaintiffs allege that they suffered any independent harm *from the denial of an audit itself*. Thus, their audit-related claims "cannot survive." *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 614 (S.D.N.Y. 2014) (dismissing contract claim for failure to adequately plead damages, even assuming that a breach of the contract's record-keeping provision was alleged), *aff'd*, 607 F. App'x 123 (2d Cir. 2015); *Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*, 651 N.Y.S.2d 490, 494 (1st Dep't 1996) (affirming dismissal for failure to allege resulting damage from the breach).

Plaintiffs' request for specific performance of the audit provision cannot save their claims.

---

request for access to [its] books and records," *id.* ¶ 247. So, at a minimum, Plaintiffs' audit-related claims against all Defendants other than Caremark, LLC should be dismissed.

In effect, Plaintiffs ask the Court to require Caremark, LLC to continue working with them by (1) "enjoin[ing] the . . . terminations of the Agreements," (2) "enjoin[ing] Caremark LLC and CVS Specialty from restricting Plaintiffs' access to the pharmacy's books and records" despite no ongoing contractual relationship, and (3) "requiring Caremark LLC and CVS Specialty to comply with the audit provisions of the Agreements." Compl. ¶¶ 248-49. But Caremark, LLC's contracts here are terminable at will,[6] and a party "cannot be compelled to specifically perform a contract validly terminated." *Columbia Terrace Dev. Corp. v. Brown*, 545 N.Y.S.2d 579, 582 (2d Dep't 1989). To force the pharmacy to perform these functions would effectively ignore the contracts' termination and recreate a contractual relationship that has lawfully ended.

## II. The Court Should Dismiss the Implied Covenant of Good Faith Claim

Plaintiffs assert an implied-covenant claim against every Defendant. *See* Compl. ¶¶ 228-34. But the claims fail against CaremarkPCS Health, Wellpartner, and CVS Health since Plaintiffs never allege having contracted with those Defendants in the first place. And the claims against the lone contracting Defendant (Caremark, LLC) fail because they are impermissibly duplicative of the breach-of-contract claims and concern conduct the contracts expressly authorized.

### A. The Claims Against All Defendants Other Than Caremark, LLC Fail Because Plaintiffs Did Not Contract with Any Defendant Other Than Caremark, LLC

An implied covenant of good faith and fair dealing is "implicit in every contract." Compl. ¶ 229 (quoting *25 Bay Terrace Assoc., L.P. v. Public Serv. Mut. Ins. Co.*, 148 N.Y.S.3d 484, 489 (2d Dep't 2021)). But when the defendant is not a party to a contract in the first place, "an action

---

[6] The Complaint's factual allegations about the contracts support no contrary inference. Where, as here, a plaintiff "failed to allege that those . . . contracts were for a definite term," the court may "presume that they were terminable at will." *Ackerson v. Restani Constr. Corp.*, 223 N.Y.S.3d 268, 271 (2d Dep't 2024); *see also Bennett v. Atomic Prods. Corp.*, 18 N.Y.S.3d 443, 445 (2d Dep't 2015) ("Contracts containing no definite term of duration are terminable at will.").

for breach of the implied covenant of good faith and fair dealing of that agreement cannot lie." *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 727 (S.D.N.Y. 2014). Here, Plaintiffs allege no contract with CaremarkPCS Health, Wellpartner, or CVS Health, so Plaintiffs have no implied covenant claim against them. *See Ray Legal*, 37 F. Supp. 3d at 727 (dismissing implied covenant claim against non-parties to underlying contract); *Atari, Inc. v. Games, Inc.*, 2005 WL 447503, at *3 (S.D.N.Y. Feb. 24, 2005) (same), *aff'd*, 164 F. App'x 183 (2d Cir. 2006).

## B. The Implied Covenant Claim Against Caremark, LLC Fails on the Merits

As to Caremark, LLC, Plaintiffs suggest three theories for their implied covenant claim: (1) Defendants "created a secret 340B arrangement under which CaremarkPCS artificially reduced the reimbursement rate for Plaintiffs' 340B drugs," Compl. ¶ 230; (2) Defendants "actively conceal[ed] their discriminatory 340B pricing scheme," *id.* ¶ 231; and (3) Caremark, LLC "terminat[ed] the Agreements in response to [Plaintiffs'] exercise of their audit rights under the Agreements," *id.* ¶ 232. These theories fail to state a claim, for one or both reasons below.

### 1. Every Implied-Covenant Theory Is Impermissibly Duplicative of a Breach-of-Contract Theory

Because the implied covenant is implicit in every contract, a breach of the implied covenant "is merely a breach of the underlying contract." *Jordan v. Verizon Corp.*, 2008 WL 5209989, at *7 (S.D.N.Y. Dec. 10, 2008) (citation omitted). So, even at the pleadings stage, courts routinely dismiss implied-covenant claims "as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of an express provision of the underlying contract." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) (cleaned up) (collecting cases); *see also LePatner & Assocs., LLP v. RSUI Grp., Inc.*, 2021 WL 4555761, at *2 (S.D.N.Y. Oct. 4, 2021); *Boustead Sec., LLC v. Leaping Grp. Co.*, 2021 WL 3774116, at *6 (S.D.N.Y. Aug. 25, 2021). The implied-covenant claims here are duplicative for two reasons.

*First*, each of Plaintiffs' implied-covenant theories "arise[s] from the same facts" that they contend breached the written contract. *Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (citation omitted). Start with the first and second theories. They are based on Defendants' supposed "secret 340B arrangement" to "artificially reduc[e] the reimbursement rate for Plaintiffs' 340B drugs" and Defendants' "actively concealing" that same "pricing scheme." Compl. ¶¶ 230-31. But those allegations are duplicative of Plaintiffs' breach-of-contract theory that they were underpaid by Caremark, LLC pursuant to the same supposed "scheme." *See id.* ¶ 177(1)-(2) (alleging Defendants breached contract by "lowering the 340B reimbursement amount paid to Caremark LLC/CVS Specialty for no purpose other than to deprive Plaintiffs of the 340B Savings" and not to Plaintiffs). There is good reason such a duplicative claim is not allowed: If Caremark, LLC's payments to Plaintiffs were correct under the terms of its contract and *not* a breach, then Plaintiffs cannot end-run Caremark, LLC's compliance—and rewrite the contract—by saying the company breached the implied covenant. *See Boustead*, 2021 WL 3774116, at *6 (dismissing implied-covenant claim based on alleged "failure to pay [plaintiff] the success fees required by the [contract]" as insufficiently "distinct from the factual predicate for its breach of contract" claim); *Concesionaria*, 307 F. Supp. 2d at 564-65 (similar).

So too for Plaintiffs' third implied-covenant theory. That theory and the contract claim are both based on Caremark, LLC's "terminating the Agreements in response to the Covered Entities' exercise of their audit rights." Compl. ¶ 232; *see id.* ¶ 249 ("Defendants further breached the contractual audit provisions by terminating the Agreements in response to the Covered Entities' exercise of their audit rights."); *see also id.* ¶¶ 177(4), 244-250. Because they are both based on the alleged audit denial and resulting termination, the Court should "dismiss [Plaintiffs'] freestanding claim for breach of the covenant of fair dealing." *Jordan*, 2008 WL 5209989, at *7.

*Second*, even if Plaintiffs could theoretically "set out a different factual basis for [an implied-covenant] claim than the factual basis set out in [their] breach of contract claim" in an amended complaint, the implied-covenant claim would *still* be duplicative because "the damages sought for both claims would be the same." *See JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022). Nothing in the Complaint suggests the first two theories seek any damages different from the breach-of-contract theories. *Compare* Compl. ¶¶ 178-79, *with id.* ¶¶ 233-34. And for the third theory—the audit and termination theory—Plaintiffs are asking for the same injunction remedy. *Compare id.* ¶ 249, *with id.* ¶ 232.

#### 2. The Termination-Based Theory Fails Because the Contracts Expressly Authorized Termination

"[T]he implied covenant of good faith and fair dealing cannot be used to impose an obligation that is inconsistent with express contractual terms." *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015). But Plaintiffs would do just that. They have "failed to allege that th[e] . . . contracts were for a definite term"; thus, the Court should "presume that they were terminable at will." *Ackerson*, 223 N.Y.S.3d at 271. Plaintiffs invoke the implied covenant to "seek an injunction to enjoin the unlawful and retaliatory terminations of the Agreements," Compl. ¶ 232, which they cannot do, *see In Touch Concepts*, 788 F.3d at 102 (dismissing implied-covenant claim premised on termination where the contract was terminable at will); *Martin v. Tumblr, Inc.*, 2017 WL 11665339, at *6 (S.D.N.Y. Feb. 10, 2017) (same).

## III. The Court Should Dismiss the Fraud Claim

Plaintiffs' common-law claim for fraud (Count III) also repackages what, in substance, is the same theory alleged to constitute a breach of contract: that Caremark, LLC paid Plaintiffs less than they were owed under their contracts. The claim is thus impermissibly duplicative of the contract claim. Plus, the claim is not pled with particularity.

### A. Any Fraud Claim Against Caremark, LLC Is Impermissibly Duplicative of the Contract Claim

New York law prohibits tort claims, including fraud, that "are duplicative of [a plaintiff's] breach of contract claim." *Lashes by Katie, LLC v. Lend Bug, LLC*, 2026 WL 810520, at *6 (S.D.N.Y. Mar. 23, 2026) (dismissing fraud claim on a motion to dismiss). The reason behind the rule is straightforward: "[a] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 290 (2023) (citation omitted). So, "where [the] plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." *Id.* (citation omitted); *accord Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013). And because contract law supplies the exclusive remedy for rights that arise solely from a contract, it makes no difference whether the contract claim ultimately survives. "New York courts . . . have routinely dismissed fraud claims as duplicative of breach of contract claims while simultaneously dismissing the related breach of contract claim." *Khodeir*, 323 F.R.D. at 203 (dismissing contract claim for failure to plead damages and dismissing fraud claim as duplicative).

Plaintiffs' fraud claim duplicates their contract claim. The alleged fraud is that Defendants falsely "represented to Plaintiffs that all reimbursement obtained by Defendants from all sources . . . would pass to Plaintiffs" and that "the amount paid to Plaintiff[s] was the total amount received." Compl. ¶¶ 198, 202. As applied to Caremark, LLC, this allegation means that it failed to fulfill its (purported) contractual commitment "relating to the remittance of all reimbursement obtained by Defendants from all sources"—the same basis for the contract claim. *Id.* ¶ 172; *see id.* ¶ 177(1). Thus, the "alleged misstatements were part and parcel of [Caremark, LLC's] performance under the" contracts, not "collateral or extraneous to" the contracts, rendering the fraud claim duplicative. *Ramus v. Bruwer*, 2025 WL 831109, at *7 (S.D.N.Y. Mar. 17, 2025)

(dismissing duplicative fraud claim); *see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (noting that "intentionally-false statements . . . indicating [a party's] intent to perform under the contract" are "not sufficient to support a claim of fraud").

The fraud claim is also redundant of the contract claim because it "seeks the same damages." *Ramus*, 2025 WL 831109, at *6, *7 n.7 (cleaned up). Both seek damages for Plaintiffs' underpayment—the delta between the amount they were paid and what they were allegedly owed under the contracts. *Compare* Compl. ¶ 179, *with id.* ¶ 208. Courts routinely dismiss duplicative fraud claims at the pleadings stage on this basis. *See Lashes by Katie*, 2026 WL 810520, at *6; *Empire Outlet Builders LLC v. Constr. Res. Corp. of N.Y.*, 97 N.Y.S.3d 68, 69 (1st Dep't 2019); *MBIA Ins. Corp. v. Credit Suisse Sec. (USA) LLC*, 84 N.Y.S.3d 157, 161 (1st Dep't 2018).

Tellingly, Plaintiffs can identify no "duty independent of the contract" to save the fraud claim from dismissal. *See, e.g.*, *IKB*, 40 N.Y.3d at 290 (dismissing claim); *see Lashes by Katie*, 2026 WL 810520, at *6 (same). The Complaint cites no legal duty (e.g., a fiduciary duty, a duty of care, etc.) that Caremark, LLC supposedly owed Plaintiffs other than one arising from the parties' contract.

### B. Fraud Is Not Pled with Particularity Against Any Defendant

The Court should dismiss the fraud claim against ***all Defendants*** for failure to plead it with particularity. "In alleging fraud[,] . . . a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]o comply with Rule 9(b), the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). "Moreover, in cases involving multiple defendants, a plaintiff cannot rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be apprised of

the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Fisher v. APP Pharms., LLC*, 783 F. Supp. 2d 424, 433 (S.D.N.Y. 2011) (cleaned up).

The Complaint here falls well short of this standard. It does not identify a single speaker of any allegedly false statement, the date(s) on which any particular false statement was supposedly made, any contextual facts around any discussion in which a false statement was supposedly made, or the name of any employee within Plaintiffs' organizations who heard or received the supposedly false statement. For example, concerning perhaps the most key statement underlying their theory of liability—that Plaintiffs would receive "all revenues the PBM receives from insurance carriers and other third-party payors for the 340B-discounted drugs dispensed, minus a dispensing fee"—the Complaint alleges nothing whatsoever concerning the who/where/when/why of the alleged statement. Compl. ¶ 6; *see also id.* ¶¶ 198, 202 (same). This Court should dismiss Plaintiffs' fraud claim under Rule 9(b). *See, e.g.*, *Negrete*, 187 F. Supp. 3d at 463 (dismissing claim where complaint was "not sufficiently detailed and . . . ha[d] not alleged even one particular example of the conduct alleged"); *Fisher*, 783 F. Supp. 2d at 433 (dismissing claim where complaint "fail[ed] to differentiate among the named Defendants").

## IV. The Court Should Dismiss the Tortious Interference with Contract Claim

Plaintiffs assert a tortious interference with contract claim "against all Defendants that were not express signatories to the Agreements," meaning CVS Health, CaremarkPCS Health, and Wellpartner. Compl. ¶ 239. "Under New York law, a claim for tortious interference requires [1] the existence of a valid contract between plaintiff and a third party, [2] defendant's knowledge of the contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 405 (S.D.N.Y. 2009) (citation omitted). The Complaint's allegations fail to state a claim for four independent reasons.

*First*, there is no well-pled breach of contract for the reasons discussed in Section I. *See supra* pp. 8-13; *Gan v. GSUIG Real Est. Member LLC*, 797 F. Supp. 3d 69, 107 (E.D.N.Y. 2025) (dismissing claim on this basis), *aff'd*, 2026 WL 1145891 (2d Cir. Apr. 28, 2026).

*Second*, Plaintiffs cannot state a tortious interference claim against CVS Health, CaremarkPCS Health, or Wellpartner because they are all entities within the same corporate family of a party whose contract was allegedly interfered with: Caremark, LLC. Compl. ¶¶ 74, 79. "[A] party cannot tortiously interfere with its own contract," and as an extension of this principle, courts have held that entities within the same corporate family cannot tortiously interfere with each other's contracts. *See Multi-Juice, S.A. v. Snapple Beverage Corp.*, 2003 WL 1961636, at *5 (S.D.N.Y. Apr. 25, 2003) (no interference claim against corporate parent); *see also MTI/The Image Grp., Inc. v. Fox Studios E., Inc.*, 690 N.Y.S.2d 576, 579 (1st Dep't 1999) (no interference claim against "parent or sister companies"); *Koret, Inc. v. Christian Dior, S.A.*, 554 N.Y.S.2d 867, 869 (1st Dep't 1990) (no interference claim against corporate parent). Moreover, "only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract," but entities within one corporate family are not true strangers. *Koret*, 554 N.Y.S.2d at 869. Based on these rationales, the Court should follow *Multi-Juice*, *MTI*, and *Koret* and dismiss the claim.

*Third*, Plaintiffs have not alleged facts establishing that CVS Health, CaremarkPCS Health, and Wellpartner possessed the requisite intent and improper purpose—that they acted for the purpose of causing Caremark, LLC to breach its contract with Plaintiffs. "[I]t is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327 (S.D.N.Y. 2017). Nor is it enough that a defendant "act[ed] with knowledge that a third party may breach a contract with some other party." *Id.* at 328. It is thus insufficient to allege, as

Plaintiffs do, that (1) these Defendants ***knew Caremark, LLC contracted*** with Plaintiffs and (2) ***a foreseeable result*** of paying Caremark, LLC less than insurance companies paid the PBM was that Plaintiffs themselves would receive a smaller share of 340B dollars.

"[I]nstead a plaintiff must allege facts showing that the defendant's *objective* was to procure such a breach," meaning "a defendant must *specifically intend* to interfere with the relevant contract." *Id.* at 327-28 (citation omitted). And Plaintiffs make no such allegation. To say that "Defendants . . . implement[ed] and execut[ed] the discriminatory 340B pricing scheme . . . ***which caused*** Caremark LLC and CVS Specialty to breach their obligations" is merely to allege ***the effect*** of the arrangement. Compl. ¶ 242. But that is not saying ***the purpose and objective*** of the arrangement was to place Caremark, LLC in violation of its contract with Plaintiffs, the third *prima facie* element for tortious interference. *See, e.g., Levinson v. Primedia Inc.*, 2007 WL 2298406, at *11 (S.D.N.Y. Aug. 9, 2007) (dismissing claim because "knowledge of an alleged improper accounting practice does not amount to tortious interference with a contract, even if such accounting practice impacts the parties' conduct under the allegedly breached contract"); *see also Gan*, 797 F. Supp. 3d at 108 (similar); *Prospect Funding*, 256 F. Supp. 3d at 328 (similar).

*Fourth*, the contracts were terminable at will or, at the very least, the Complaint's allegations do not say otherwise. "[C]ontracts terminable-at-will may not form the basis of a tortious interference with contract claim in New York." *Discover Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 85-86 (E.D.N.Y. 2004) (dismissing claim). That is because a plaintiff "enjoys no legally enforceable right to performance" in an at-will contract; the "interest is a mere expectancy—a hope of future contractual relations." *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (citation omitted). "[A]n expectancy interest is not entitled to the same protection that would have been accorded a legally enforceable right to

performance under the agreement." *Dorsett-Felicelli, Inc. v. County of Clinton*, 2011 WL 1097859, at *4 (N.D.N.Y. Mar. 22, 2011) (citation omitted) (dismissing claim). Plaintiffs cannot state a claim for tortious interference with their discontinued, terminable-at-will contract.

## V. The Court Should Dismiss the Unjust Enrichment Claim

The unjust enrichment claim (Count VI) fails because (1) the Plaintiff-to-Caremark, LLC contract precludes any quasi-contract claim, and (2) Plaintiffs conferred no benefit on Defendants.

*First*, "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009). That is because unjust enrichment is merely "a quasi-contract claim" that the law creates in "the absence of an actual agreement." *See id.* (citation omitted).

Here, Plaintiffs plead unjust enrichment "[i]n the alternative" to their contract claim. Compl. ¶ 236. But "[p]leading unjust enrichment and breach of contract in the alternative can only occur if there is a genuine dispute as to the validity of the underlying agreement." *Lashes by Katie*, 2026 WL 810520, at *7 (quoting *Gan*, 797 F. Supp. 3d at 114). There is no such dispute here as to Caremark, LLC; therefore, "Plaintiffs do not successfully plead unjust enrichment" against Caremark, LLC. *Gan*, 797 F. Supp. 3d at 114; *see Hanover Specialties, Inc. v. Les Revêtements Polyval Inc.*, 2021 WL 964970, at *10 (E.D.N.Y. Mar. 15, 2021) (collecting cases).

So too for the other Defendants. "Numerous decisions applying New York law have held that an unjust enrichment claim is barred if there is a valid contract governing the subject matter of the dispute, *even if one of the parties to the claim is not a party to that contract*." *Mueller v. Michael Janssen Gallery Pte. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) (emphasis in original) (citation omitted); *see Banco Espírito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003

WL 23018888, at *17-18 (S.D.N.Y. Dec. 22, 2003) (same), *aff'd*, 110 F. App'x 191 (2d Cir. 2004).

*Second*, Plaintiffs' theory is that third parties—not Plaintiffs themselves—conferred the supposed benefit at issue here. Unjust enrichment requires that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Mueller*, 225 F. Supp. 3d at 207 (citation omitted). Thus, "a plaintiff must establish that it conferred a benefit upon the defendant." *MT Prop., Inc. v. Ira Weinstein & Larry Weinstein, LLC*, 855 N.Y.S.2d 627, 628 (2d Dep't 2008). So courts have "rejected unjust enrichment claims where the plaintiff seeks to recover fees it did not pay." *Mueller*, 225 F. Supp. 3d at 209 (collecting cases).

Such is the case here. Plaintiffs do not claim that *they* made any payment to any Defendant at issue here. Instead, Plaintiffs say a stream of payments originating *from third parties* should have ended up with them. Their theory is that insurers paid the PBM Defendant (CaremarkPCS Health), *see* Compl. ¶ 84, who in turn paid the specialty pharmacy Defendant (Caremark, LLC), *id.*, and that patients also paid the specialty pharmacy, *id.* ¶ 84; *see supra* pp. 3-5 (explaining the flow of payments). Then, say Plaintiffs, all "Defendants" should have, but did not, "pass along to Plaintiffs all revenues the PBM receive[d] from insurance carriers and other third-party payors for the 340B-discounted drugs dispensed, minus a dispensing fee." Compl. ¶ 6. Plaintiffs thus seek disgorgement of payments Defendants "obtained from . . . other companies," which "does not, and cannot, allege that [Defendants] ha[ve] been unjustly enriched at [Plaintiffs'] expense." *IDT Corp.*, 12 N.Y.3d at 142; *see Banco Espírito Santo*, 2003 WL 23018888, at *18 (dismissing claim where "the fees received by [the defendant] came from [a third party], not from [the plaintiff]").

## VI. The Court Should Dismiss the RICO Claims

The Court should dismiss Plaintiffs' RICO claim because Plaintiffs impermissibly recast the contract claim, do not allege a RICO "enterprise," and do not sufficiently allege predicate acts.

### A. Plaintiffs Cannot Recharacterize Their Contract Claims as RICO Claims

Courts admonish plaintiffs not to "turn [a] case into a RICO case simply by recasting breach of contract . . . as conspiracies of deception and fraud." *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 2013 WL 3943267, at *6 (S.D.N.Y. July 31, 2013) (citation omitted). But that is precisely what Plaintiffs do here. They characterize the alleged breach of contract—"not remitting all payments made to CaremarkPCS at the point-of-sale for 340B drugs to Plaintiffs"—as also a RICO violation. Compl. ¶ 177; *see id.* ¶ 220 (alleging RICO violations based on "the difference between the point-of-sale adjudicated amount and the lower 340B reimbursement"). Following the lead of courts like *Helios*, the Court should dismiss Plaintiffs' RICO claim.

### B. Plaintiffs Do Not Plausibly Allege a RICO "Enterprise"

"To establish a violation of [18 U.S.C.] § 1962(c) . . . a plaintiff must show that a person engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013). Consistent with RICO's "overriding purpose . . . to create a weapon useful in combating organized crime," *Virtual Dates, Inc. v. Afternic.com, Inc.*, 2001 WL 1646451, at *1 (S.D.N.Y. Dec. 20, 2001), a RICO plaintiff must allege a "person" for RICO purposes that is separate from the "enterprise," *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88-89 (2d Cir. 1999). But "a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Id.* (citation omitted). Likewise, corporate defendants are "not sufficiently distinct to demonstrate the existence of a RICO enterprise" where the alleged "enterprise" consists of a parent corporation and its subsidiaries that are "alleged to operate as part of a single, unified corporate structure." *Cruz*, 720 F.3d at 121.

Such is the case here. According to Plaintiffs, "CVS Health, CaremarkPCS, Caremark LLC, CVS Specialty, and WellPartner" constitute an "association-in-fact enterprise." Compl.

¶ 210. Plaintiffs also allege Defendants are "vertically-integrated" and that "CVS Health exercised common ownership and control over the other Defendants, who are wholly owned subsidiaries of CVS Health." *Id.* ¶¶ 3, 9, 31. Thus, Plaintiffs cast both the parent (CVS Health) and its vertically integrated subsidiaries (the other Defendants) as the "persons" committing the predicate acts and the "enterprise" itself—which is what the law prohibits. *See Cruz*, 720 F.3d at 120; *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (no distinctness where plaintiff "alleg[ed] a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant"). Because Plaintiffs do not allege a cognizable "enterprise," Plaintiffs fail to state a claim.

### C. Plaintiffs Do Not Adequately Allege the Predicate Acts

A RICO plaintiff must allege "racketeering activity." *Cruz*, 720 F.3d at 120. Here, Plaintiffs say three predicate acts exist: (1) embezzlement from employee benefit plans in violation of 18 U.S.C. § 664; (2) kickbacks concerning employee welfare pension and benefit plans in violation of 18 U.S.C. § 1954; and (3) wire fraud in violation of 18 U.S.C. § 1343. Compl. ¶¶ 213-27. But Plaintiffs do not sufficiently allege that the first two predicate acts ***caused*** their injury, and Plaintiffs fail to state ***plausibly and with particularity*** any of the three predicate acts.

#### 1. Plaintiffs Suffered No Injury from Two Alleged Predicate Acts

A civil RICO claim requires injury to the plaintiff "by reason of" a RICO violation. 18 U.S.C. § 1964(c). The defendant's violation thus must be the "but for" and "proximate cause" of the plaintiff's injury. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). Critically, "the question . . . is not whether defendants' *conduct as a whole* directly caused plaintiff's injury, but whether the *specific RICO predicate acts* alleged to have been committed by defendants *directly caused* plaintiff's injury." *Empire Merchants, LLC v. Reliable Churchill LLLP*, 2017 WL 5559030, at *17 (E.D.N.Y. Mar. 16, 2017) (emphasis in original), *aff'd*, 902 F.3d 132 (2d Cir.

2018). Where a third party "was more directly harmed," however, courts commonly refuse to "go beyond the first step" in the causal chain, and dismiss a RICO claim. *See, e.g.*, *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 141-42 (2d Cir. 2018).

Here, Plaintiffs allege that Defendants somehow (1) embezzled from employee benefit plans that were clients of CaremarkPCS Health, the PBM. *See* Compl. ¶¶ 214-15; *supra* pp. 3-5 (explaining the insurer-to-PBM relationship). Plaintiffs then claim that Defendants somehow (2) accepted kickbacks that exceeded the "fair market value of the Contract Pharmacy services rendered in relation to the administration of Plaintiffs' 340B program." Compl. ¶ 217. In both instances, the party "directly harmed" by these alleged wrongs is not Plaintiffs (hospitals), but the employee plans providing coverage to Plaintiffs' patients—either because their funds were allegedly misappropriated (embezzlement) or used contrary to the plan's benefit rules based on an inducement (kickback). Because Plaintiffs were not directly harmed, they lack RICO causation and thus fail to state a claim. *See, e.g.*, *McKinney v. Moore*, 2007 WL 1149253, at *4 (S.D.N.Y. Apr. 16, 2007) (dismissing claim based on alleged embezzlement and noting that "the harm is inflicted on the fund itself").

### 2. Plaintiffs Do Not Plead Any Predicate Act with Particularity

Plaintiffs must plead fraud and embezzlement with particularity under Rule 9(b). *See* *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251-52 (S.D.N.Y. 2008). They do not do so.

***Embezzlement.*** "The elements of a Section 664 embezzlement claim include: (1) the unauthorized; (2) taking or appropriation; (3) of [employee] benefit plan funds; (4) with specific criminal intent." *United States v. Lasky*, 967 F. Supp. 749, 752 (E.D.N.Y. 1997). Plaintiffs plead none of these required elements, devoting a mere three paragraphs in the Complaint to Section 664, Compl. ¶¶ 213-15, asserting in conclusory fashion only that Defendants violated Section 664 by

"steering and diverting" 340B funds, *id.* ¶ 215. That is plainly insufficient under Rule 9(b). *See Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 264 (S.D.N.Y. 2011) (applying Rule 9(b) to 18 U.S.C. § 664). Plaintiffs do not identify what funds were diverted, when, by whom, why it was unlawful, or which plan's funds they were in the first place. This last point is key, because a Section 664 offender must take or misappropriate property of ERISA-covered "benefit plan funds" specifically. The Complaint vaguely says that "much of the reimbursement for 340B drugs come from self-funded employee benefit plans," Compl. ¶ 214, without asserting that there were any benefit plan funds involved *in Plaintiffs' 340B transactions specifically*. That allegation is far too generic to establish a violation of Section 664.

***Kickbacks.*** 18 U.S.C. § 1954 prohibits (1) a person who provides benefit plan services to (2) an employee welfare benefit plan or employee pension benefit plan from (3) receiving or soliciting any (4) fee, kickback, commission, gift, loan, money, or thing of value (5) because of or with intent to be influenced with respect to, any of the actions, decisions, or other duties relating to such plan. Paragraph 217 of the Complaint represents the totality of Plaintiffs' factual allegations concerning why Section 1954 was supposedly violated. It is plainly inadequate. For example, neither that paragraph nor any other establishes that any payment a Defendant received constituted a "kickback" as opposed to the type of "bona fide . . . payment[]" (received by CaremarkPCS Health from its insurer-clients for providing PBM services under their contracts), which would fall outside the statute's plain terms. 18 U.S.C. § 1954. Similarly, no allegations suggest that any payments to a Defendant were made "because of," or "with the intent to," improperly influence how that Defendant administered an employee welfare or pension benefit plan, *id.*; there is no allegation that any Defendant was in cahoots with employee welfare or pension plans. Further, "the statute targets *individual* conduct, not any organization." *Vaughn v. Air Line*

*Pilots Ass'n, Int'l*, 395 B.R. 520, 547 (E.D.N.Y. 2008). Plaintiffs do not allege any individual violated Section 1954, and a corporate defendant cannot violate the statute. *Id.*

***Wire Fraud.*** Wire fraud requires "(1) a scheme to defraud (which requires proof of a material misrepresentation) (2) to get money or property (3) furthered by the use of interstate mail or wires." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 690 F. Supp. 3d 167, 178 (S.D.N.Y. 2023) (citation omitted). Plaintiffs fail to allege a violation for two reasons.

*First*, the so-called "fraud" is functionally Caremark, LLC's alleged breach of contract, and the "statement upon which the fraud claim is predicated must be more than a false promise to fulfill the terms of the agreement." *Bigsby v. Barclays Cap. Real Est., Inc.*, 170 F. Supp. 3d 568, 576 (S.D.N.Y. 2016). When a plaintiff merely re-alleges a claim for breach of contract and styles it as "fraud," it does not qualify as a RICO predicate act—a defendant must owe "some legal duty beyond the obligations contained within the contracts." *Lefkowitz v. Reissman*, 2014 WL 925410, at *3, *5 (S.D.N.Y. Mar. 7, 2014). That is exactly what Plaintiffs do here. *Supra* pp. 17-18.

*Second*, Plaintiffs fail to plead fraud with particularity under Rule 9(b). Paragraph 220 is the only attempt at particularity. Its subparts relating to "CaremarkPCS Electronic Claims Rate Reduction Transmissions" and "Internal Coordinating Electronic Communications" do not allege that any information contained in the documents was factually inaccurate. Compl. ¶ 220. The remaining subpart alleges that a Wellpartner Monthly Electronic Report "falsely reflected a gross insurance payment to CVS Specialty that was materially less than the amount actually adjudicated and paid by the applicable payor at the point of sale, and falsely reflected a patient co-pay/co-insurance amount of $0.00 on the majority of claims." *Id.* But Plaintiffs fail to plead any factual support showing that Wellpartner's reports purported to reflect the amount "paid by the applicable payor," rather than the reimbursement received by CVS Specialty. The $0.00 patient payment

amounts have no nexus whatsoever to Plaintiffs' theory of wrongdoing in this case: the underpayment of Plaintiffs by Caremark, LLC. That alleged misstatement therefore cannot have been material to Plaintiffs, and the Complaint contains no well-pled facts showing it *was* material. Furthermore, Plaintiffs' allegation regarding the $0.00 patient payment amounts is conclusory; it does not contain the who, what, when, where, why required by Rule 9(b). *Lerner*, 459 F.3d at 290.

## VII. The Court Should Dismiss the New York General Business Law Claim

A claim under Section 349 requires "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Schuman v. Visa U.S.A., Inc.*, 788 F. Supp. 3d 563, 574 (S.D.N.Y. 2025). Plaintiffs allege a contract dispute between sophisticated businesses, not consumer-oriented conduct.

Conduct is "consumer-oriented" when it is "directed to the consuming public and the marketplace." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (2021). The "defendant's acts or practices must have a broad impact on consumers at large," and "private contract disputes unique to the parties would not fall within the ambit of the statute." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (cleaned up). The supposed deception here was targeted at Plaintiffs—hospitals—not at any patients receiving drugs under the 340B program. *See* Compl. ¶ 186; *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 613 (S.D.N.Y. 2005) ("The conduct for which ES seeks to hold WL liable was directed at Medco, not at diabetes patients."). Nor do any allegations demonstrate that Defendants adversely affected consumers at large. Covered entities are not even legally required to pass on 340B savings to patients in the first instance. *See supra* pp. 6-7; Compl. ¶ 187 ("340B savings flow to the Covered Entities to spend as they see fit."); *AbbVie Inc. v. Drummond*, 808 F. Supp. 3d 1266, 1270 (W.D. Okla. 2025) ("Covered entities are not obligated to pass any of this [340B] windfall on to patients."). The Court should dismiss the Section 349 claim.

## VIII. The Court Should Dismiss CVS Health Corporation

"[D]eeply 'ingrained in our economic and legal systems'" is the principle that "a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted); *see De Jesus v. Sears, Roebuck, & Co., Inc.*, 87 F.3d 65, 69-70 (2d Cir. 1996). So too, "[t]he fact that two separate legal entities may have a corporate affiliation—perhaps owned by the same holding company—does not alter" the requirement to allege facts showing each defendant's liability. *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016).

At a minimum, the Complaint does not do so for CVS Health, a holding company. Unsurprisingly, the Complaint does not describe any specific wrongful act by CVS Health, merely emphasizing its ownership of the other Defendants. *See, e.g.*, Compl. ¶ 160. The only specific factual allegation concerns an SEC filing about the importance of 340B-related revenue. *Id.* ¶¶ 20, 222. But Plaintiffs do not connect that SEC filing with the alleged scheme, nor otherwise allege that the filing was inaccurate, misleading, or wrongful. *See Schachter v. Sunrise Senior Living Mgmt., Inc.*, 2020 WL 1274601, at *6 (D. Conn. Mar. 16, 2020) ("Nor do any of the snippets of sundry SEC filings quoted by plaintiffs show facts that . . . make up for the paucity of allegations in the complaint."). As other courts have done at the pleadings stage, this Court should dismiss CVS Health. *See*, *e.g.*, *Church Ekklasia Sozo Inc. v. CVS Health Corp.*, 2022 WL 1572732, at *3-4 (W.D.N.C. Feb. 25, 2022) (detailing that CVS Health is a holding company without operations and dismissing it); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 979-81 (N.D. Cal. 2016); *Tashjian v. CVS Pharm., Inc.*, 2020 WL 1931859, at *3-4 (D. Mass. Mar. 13, 2020).

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Dated: July 22, 2026

Respectfully submitted,

/s/ *Grant A. Geyerman*

Enu Mainigi (*pro hac vice pending*)
Grant A. Geyerman (*pro hac vice*)
Benjamin N. Hazelwood (Bar No. 5001508)
Joseph S. Sandoval-Bushur (*pro hac vice pending*)

WILLIAMS & CONNOLLY LLP
650 Fifth Avenue, Suite 1500
New York, NY 10019

680 Maine Avenue, S.W.
Washington, DC 20024

Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
ggeyerman@wc.com
bhazelwood@wc.com
jsandoval-bushur@wc.com

*Attorneys for Defendants CVS Health Corp., CaremarkPCS Health, LLC, Caremark, LLC, and Wellpartner, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2026, a true and correct copy of the foregoing document was filed electronically through the ECF system and counsel of record received notification via ECF.

Dated: July 22, 2026

Respectfully submitted,

/s/ *Grant A. Geyerman*

Grant A. Geyerman
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Email: ggeyerman@wc.com

For Matters in New York:
650 Fifth Avenue, Suite 1500
New York, NY 10019